# In the United States Court of Appeals for the Fifth Circuit

### Kimberly Harmon,
*Plaintiff-Appellee,*

*v.*

### Bryan Collier, Executive Director, Texas Department of Criminal Justice; Texas Department of Criminal Justice,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division

## REPLY BRIEF FOR APPELLANTS

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General

Beth Klusmann
Assistant Solicitor General
Beth.Klusmann@oag.texas.gov

Counsel for Defendants-Appellants

# Table of Contents

Page

Table of Authorities ......................................................................................ii

Introduction ................................................................................................. 1

Argument ..................................................................................................... 1

   I.   Harmon's Separation Was Not Unlawfully Discriminatory or
       Retaliatory. ...................................................................................... 1

       A.  Harmon's inability to work rendered her unqualified for the
           position of correctional officer ...............................................2

           1.  Attendance was an essential function of Harmon's job. ...............3

           2.  Federal law does not require TDCJ to provide an
                accommodation beyond 180 days of LWOP. ...............................4

       B.  Harmon's separation was not caused by discrimination or
           retaliation. ...........................................................................6

  II.  The Failure to Rehire Harmon Was Not Discriminatory or
       Retaliatory. .................................................................................. 10

 III.  The Jury Made Irreconcilable Findings ........................................... 13

 IV.  The District Court's Damages Award Should Be Reversed. .................... 15

       A.  Harmon is not entitled to $1 million for four years of "wages
           and benefits." ..................................................................... 16

       B.  Harmon cannot recover damages against Collier. ........................ 18

       C.  Any monetary award should be reconsidered if the Court
           reverses any portion of the judgment ...................................... 20

Conclusion ................................................................................................. 20

Certificate of Service .................................................................................. 21

Certificate of Compliance ........................................................................... 21

# Table of Authorities

Page(s)

**Cases:**

*Arismendez v. Nightingale Home Health Care, Inc.*,
    493 F.3d 602 (5th Cir. 2007) ............................................................ 11

*Bd. of Trs. of Univ. of Ala. v. Garrett*,
    531 U.S. 356 (2001) ...............................................................18, 19

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020) ................................................................. 15

*Bryant v. Compass Grp. USA Inc.*,
    413 F.3d 471 (5th Cir. 2005) ..........................................................7

*Carmona v. Sw. Airlines Co.*,
    604 F.3d 848 (5th Cir. 2010) ..........................................................3

*CG v. Pa. Dep't of Educ.*,
    734 F.3d 229 (3d Cir. 2013) .......................................................... 14

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ..................................................................... 12

*EEOC v. Dolgencorp, LLC*,
    899 F.3d 428 (6th Cir. 2018) ..........................................................9

*Faidley v. United Parcel Serv. of Am., Inc.*,
    889 F.3d 933 (8th Cir. 2018) ........................................................4-5

*Farrar v. Hobby*,
    506 U.S. 103 (1992) ..................................................................... 19

*Griffin v. Matherne*,
    471 F.2d 911 (5th Cir. 1973) ......................................................... 14

*Hwang v. Kan. State Univ.*,
    753 F.3d 1159 (10th Cir. 2014) .......................................................9

*Knutson v. Schwan's Home Serv., Inc.*,
    711 F.3d 911 (8th Cir. 2013) ..........................................................5

*Lawrence v. Fed. Home Loan Mortg. Corp.*,
    808 F.3d 670 (5th Cir. 2015) ......................................................... 19

*Lyons v. Katy ISD*,
    964 F.3d 298 (5th Cir. 2020) ......................................................... 12

*Manning v. Chevron Chem. Co., LLC*,
    332 F.3d 874 (5th Cir. 2003) ......................................................... 10

*Miller v. Raytheon Co.*,
   716 F.3d 138 (5th Cir. 2013) ........................................................................ 17

*Milton v. Scrivner, Inc.*,
   53 F.3d 1118 (10th Cir. 1995) ...................................................................... 5

*Moss v. Harris Cnty. Constable Precinct One*,
   851 F.3d 413 (5th Cir. 2017) ........................................................................ 2

*Mueck v. La Grange Acquisitions, LP*,
   75 F.4th 469 (5th Cir. 2023) ................................................................12, 13

*Myers v. Hose*,
   50 F.3d 278 (4th Cir. 1995) ....................................................................4, 6

*Nat'l Hisp. Circus, Inc. v. Rex Trucking, Inc.*,
   414 F.3d 546 (5th Cir. 2005) ...................................................................... 15

*Reed v. Petroleum Helicopters, Inc.*,
   218 F.3d 477 (5th Cir. 2000) ........................................................................ 2

*Roberson v. Alltel Info. Servs.*,
   373 F.3d 647 (5th Cir. 2004) ...................................................................... 11

*Severson v. Heartland Woodcraft, Inc.*,
   872 F.3d 476 (7th Cir. 2017) ........................................................................ 4

*Sharkey v. Lasmo (AUL Ltd.)*,
   214 F.3d 371 (2d Cir. 2000) ........................................................................ 17

*Tawakkol v. Vasquez*,
   81 F.4th 397 (5th Cir. 2023) ........................................................................ 19

*Tex. State Tchrs. Ass'n v. Garland ISD*,
   489 U.S. 782 (1989) .................................................................................... 19

*Turco v. Hoechst Celanese Corp.*,
   101 F.3d 1090 (5th Cir. 1996) ...................................................................... 5

*U.S. Postal Serv. Bd. of Governors v. Aikens*,
   460 U.S. 711 (1983) .................................................................................... 11

*United States ex rel. Wallace v. Flintco, Inc.*,
   143 F.3d 955 (5th Cir. 1998) ...................................................................... 17

*White v. Grinfas*,
   809 F.2d 1157 (5th Cir. 1987) .................................................................... 15

**Statutes and Rules:**

29 U.S.C.:

  § 794 ....................................................................................... 1

  § 794(a) ...................................................................... 2, 6, 14

  § 794(d) ................................................................................ 6

42 U.S.C.

  § 2000e-5(k) ....................................................................... 19

  § 12111(8) ............................................................................ 2

  § 12112 ................................................................................. 1

  § 12112(a) ...................................................................... 2, 6

  § 12112(b)(5)(A) ................................................................ 5

  § 12203 ........................................................................... 1, 6

  § 12203(a) .......................................................................... 12

Fed. R. Civ. P. 59 ................................................................... 18

# Introduction

Kimberly Harmon's employment with the Texas Department of Criminal Justice ended because she exhausted 180 days of leave without pay (LWOP), not because individuals at TDCJ discriminated or retaliated against her. Her discrimination claims cannot overcome the first threshold—that she could perform the essential functions of her job. Her assertion that she could, despite requiring more than 180 days of LWOP, blinks reality and is not supported by precedent. And her attempts to demonstrate an unlawful motive on the part of the employees involved in her separation and decision not to rehire her fall short. The fact questions she raises do not reveal any unlawful intent, leaving Harmon without evidence sufficient to justify the jury's verdict.

Other errors also infect the judgment: the jury's answers are irreconcilable, the damages award bears no relation to the evidence, and the monetary judgment against Bryan Collier was not requested by Harmon and is barred by immunity. The Court should reverse the judgment of the district court and remand with instructions to enter judgment in favor of Defendants.

# Argument

## I. Harmon's Separation Was Not Unlawfully Discriminatory or Retaliatory.

Harmon fails to identify sufficient evidence to support the jury's verdict that Defendants violated the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112, 12203. Rather the evidence reflects that (1) Harmon could not perform the essential functions of her job, and (2) her

separation was not caused by discrimination or retaliation. In response, Harmon claims that she could perform her job duties with an accommodation of a single additional day of LWOP. *E.g.*, Appellee's Br. 16. But this framing ignores that TDCJ had already accommodated her with 180 days of LWOP. And Harmon's efforts to show that her separation was discriminatory or retaliatory focus largely on irrelevant facts that do not demonstrate an unlawful intent on the part of those involved. The jury's verdict is not supported by the evidence and should be reversed.

### A. Harmon's inability to work rendered her unqualified for the position of correctional officer.

Both the Rehabilitation Act and the ADA require a plaintiff to be a "qualified individual" who can perform the essential functions of the job in question with or without a reasonable accommodation. 29 U.S.C. § 794(a); 42 U.S.C. §§ 12111(8), 12112(a). To Harmon's first point (at 12-13), Defendants have not contended that Harmon was unable to perform the essential functions of her job—when she came to work. Rather, Harmon was not qualified for the position of correctional officer because she frequently could not come to work. *See, e.g.*, *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017); *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000) (per curiam). Thus, the only question is whether the additional leave requested by Harmon was a reasonable accommodation or whether Defendants were permitted to separate her after she exhausted her 180 days.

Harmon fails to address the precedent from this Court and courts of appeals across the country holding that extended or indefinite absences are not reasonable

accommodations that qualify an employee to work. Appellants' Br. 18-22. Instead, she argues that (1) attendance was not an essential function of her job as a correctional officer, and (2) she was entitled to leave beyond the 180-day LWOP limit as a reasonable accommodation. Neither is correct.

### 1. Attendance was an essential function of Harmon's job.

Harmon first argues (at 14-15) that attendance was not an essential function of her job, so she did not need to be at work in order to be qualified. To make this argument, she points to the job description for a correctional officer and notes that it does not list attendance as an essential function. Appellee's Br. 15. But that job description lists the essential functions as being responsible for the care and custody of offenders, searching for contraband, providing security, supervising offenders, and responding to emergencies, among other duties. ROA.4046-47. Harmon offers no explanation for how she could perform those duties from her home. To the contrary, she admitted at trial that she needed to be at work to do her job. ROA.2873; *see also* ROA.3233 (Warden Charles Siringi testifying that a correctional officer had to be at work to perform the essential functions of the job).

Harmon's reliance (at 14) on *Carmona v. Southwest Airlines Co.*, 604 F.3d 848 (5th Cir. 2010), fails to demonstrate that attendance was not an essential function. There, flight attendants' schedules were "extremely flexible," suggesting attendance was not an essential job function. *Id.* at 859. But that is not the case with correctional officers like Harmon, who work specific eight-hour shifts, six days on and three days off. ROA.2605-06. Harmon needed to be at work in order to fulfill her job duties. Thus, she required an accommodation of leave, and the question here is whether

the amount of leave she needed was reasonable under federal law. *E.g.*, *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017).

### 2. Federal law does not require TDCJ to provide an accommodation beyond 180 days of LWOP.

**a.** To minimize the accommodation she needed, Harmon asserts the 180 days of LWOP that she received was an entitlement, so she required only one additional day of leave to accommodate her disability. Appellee's Br. 14, 17. But TDCJ's LWOP policy itself states that "LWOP-Medical is not an entitlement." ROA.3612. Harmon has only her own self-serving testimony to the contrary. ROA.2650-51 ("I guess it's an entitlement."). The other witness she cites stated only that Harmon "wasn't entitled to" LWOP beyond 180 days, ROA.3328, and the notation on internal paperwork that Harmon had "exhausted all leave entitlements" does not transform LWOP into an entitlement contrary to TDCJ policy, ROA.3961. Further, Harmon's claim (at 14) that LWOP was routinely granted demonstrates only that her supervisor freely granted LWOP, not that Harmon was legally entitled to it.

Relatedly, the existence of TDCJ's LWOP policy does not establish that granting more than 180 days of LWOP was a reasonable accommodation. Appellee's Br. 14. As the Fourth Circuit has explained, "[a] particular accommodation is not necessarily reasonable, and thus federally mandated, simply because the [employer] elects to establish it as a matter of policy." *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995). Thus, an employer with a generous leave policy is not required to continue providing leave once it has exceeded what would be a reasonable accommodation. *See Faidley v. United Parcel Serv. of Am., Inc.*, 889 F.3d 933, 943 (8th Cir. 2018) (en

banc) ("If an employer 'bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.'" (citation omitted)). TDCJ's policy of providing up to 180 days of LWOP does not bind TDCJ to keep providing LWOP after the 180-day limit is reached.

**b.** Harmon next asserts (at 14-15, 17) that her requested accommodation was reasonable because other employees were willing to work overtime to cover for her. But "an accommodation that would result in other employees having to work harder or longer is not required under the ADA." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996) (per curiam). And Siringi testified that, if he could not find a volunteer, he would have to "mandatory" or order enough officers to work overtime to ensure all of the positions were filled. ROA.3231. This is not a question of the undue-hardship affirmative defense, 42 U.S.C. § 12112(b)(5)(A), but of whether TDCJ is required to reassign Harmon's duties in the first place. It is not. *Knutson v. Schwan's Home Serv., Inc.*, 711 F.3d 911, 916 (8th Cir. 2013); *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995).

**c.** Harmon then shifts the focus to other purported policies. She asserts that she could not come to work because TDCJ did not permit correctional officers to work with medical restrictions. Appellee's Br. 15-16, 18. But Harmon has not explained how she could perform the essential functions of her job as a correctional officer when her disability caused dizziness and made her unable to stand or walk. ROA.2561. The only potential accommodation she has ever identified is leave. *See*

*Myers*, 50 F.3d at 282 n.2 (explaining that sometimes leave is the only possible accommodation).

Harmon also makes the incorrect assertion that TDCJ somehow discriminates against disabled employees by granting leave under the Family and Medical Leave Act (FMLA). Appellee's Br. 20, 25. But the testimony shows only that TDCJ grants LWOP and, as required by federal law, FMLA leave. ROA.3224, 3316, 4021. Granting employees statutorily required FMLA leave is not discriminatory.

For these reasons, Harmon has not identified a reasonable accommodation that would make her a qualified individual under either the Rehabilitation Act or the ADA. Her only option was not to work for a significant amount of time, which is not an accommodation that enables her to perform the essential functions of her job. Consequently, her discrimination and reasonable-accommodation claims necessarily fail.

## B. Harmon's separation was not caused by discrimination or retaliation.

The ultimate question in this case is why TDCJ separated Harmon from employment—whether it because of her disability, her protected activity, or her exhaustion of LWOP. 29 U.S.C. § 794(a), (d); 42 U.S.C. §§ 12112(a), 12203. Harmon has not identified sufficient evidence that TDCJ employees possessed either a discriminatory or retaliatory intent regarding her separation. And her new theory, that she need not show a discriminatory intent, merely repackages her faulty reasonable-accommodation argument.

**1.**    Beginning with discriminatory intent, Harmon leans into evidence that Marisol Reyes, the human resources employee who handled her separation, may have miscalculated Harmon's LWOP. Appellee's Br. 24-25. Harmon asserts that she "relied" on the March letter sent by Reyes that erroneously indicated she had 80 days of LWOP left. Appellee's Br. 5. But Harmon does not claim that she would have taken fewer LWOP days if she had known of the miscalculation—indeed, had she done so, she would have demonstrated only that she did not actually need LWOP as an accommodation. She also complains that TDCJ should not have charged her with an LWOP day on September 25, when she showed up for the incorrect shift. Appellee's Br. 6, 24-25. But Harmon herself requested to take that day as LWOP.[1] ROA.4098. Regardless, an error in calculating LWOP is not sufficient to demonstrate that Reyes possessed a discriminatory intent. *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

Harmon also conflates her separation paperwork, ROA.3961-62, with her payroll status paperwork, ROA.3960, arguing that she was not actually separated until June 8. Appellee's Br. 23. It is unclear how this demonstrates a discriminatory intent, but her claims are incorrect. Reyes initiated the separation and obtained concurrences from TDCJ's human resources department in Huntsville which indicated the separation would be effective as of May 31. ROA.3961-62. Following that, she requested

---

[1] Harmon complains (at 6) that her time-keeping records for the month of September 2017 are not in evidence. But her approved requests for leave are, and they demonstrate that Harmon took the entire month as LWOP. ROA.4097-99 (requesting LWOP from August 21 to October 1).

a payroll status change, which also received the required approvals. ROA.3960. This follows the procedures set out in TDCJ policy for when an employee exhausts her LWOP. ROA.3107, 4026.

Harmon also points to the testimony of Terry Bailey, TDCJ's accommodations coordinator. Appellee's Br. 25-26; ROA.3264. Asked to consider the situation after the fact, Bailey agreed that leave can be a reasonable accommodation, ROA.3282-83, but she disagreed that Harmon's May 31 doctor's note stating that she could return to work on June 4 sufficiently apprised TDCJ that Harmon may have a disability that needed accommodating, ROA.3273. Bailey, however, was not involved in Harmon's separation. ROA.3275. And whether Harmon received an ADA packet in October 2017, another factual dispute raised by Harmon (at 26-27), does not establish that Reyes had discriminatory intent when she initiated Harmon's separation in May 2018. ROA.2622-23 (Harmon denying receiving a packet); ROA.3259-62 (testimony that employee handed Harmon a packet).

Finally, Harmon selectively cites the record in an attempt to support her claim that Defendants were "out to get [her]." Appellee's Br. 25. For example, she claims that Siringi testified that he approved every "LWOP extension," suggesting that he approved LWOP beyond the 180-day limit. Appellee's Br. 19. But as Siringi explained, his reference to an "LWOP extension" was to approving requests *within* the 180-day period, not to extending LWOP *beyond* 180 days. ROA.3224-25. Instead, he confirmed that he did not have the authority to extend LWOP beyond 180 days. ROA.3245. Harmon also claims that the allegations in her 2017 EEO complaint regarding her shift change were "Sustained." Appellee's Br. 4, 23. They were not.

Harmon's EEO complaint (#17004679) was found to be without cause, ROA.3953, 3966, but her general grievance about the shift change (#17005127) was sustained, ROA.3954. *See also* ROA.3938-41. Harmon's alleged facts are not supported by the record and are not sufficient evidence of discriminatory intent.

2.    Having insufficient evidence of a discriminatory motive, Harmon switches tactics and asserts that no discriminatory intent is necessary. Appellee's Br. 22 (quoting *EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018)). But *Dolgencorp* concerned a refusal to grant a reasonable accommodation—something an employer is obligated to do regardless of intent. *See Dolgencorp*, 899 F.3d at 436. As Defendants have explained, TDCJ's LWOP policy is a reasonable accommodation that was provided to Harmon. TDCJ was not required to exceed the 180-day limit to accommodate Harmon because 180 days was a sufficient accommodation in the first place. *E.g.*, *Hwang v. Kan. State Univ.*, 753 F.3d 1159 (10th Cir. 2014).

Thus, Harmon's May 31 doctor's note, ROA.3874, submitted after she had exhausted her LWOP, did not require TDCJ to extend its 180-day rule. As then-Judge Gorsuch has explained, even "inflexible" leave policies of six months do not violate the Rehabilitation Act. *Hwang*, 753 F.3d at 1164. Instead, such policies can protect the rights of the disabled by "ensuring disabled employees' leave requests aren't secretly singled out for discriminatory treatment, as can happen in a leave system with fewer rules, more discretion, and less transparency." *Id.* As TDCJ's LWOP policy provided more than a sufficient amount of leave, Defendants' failure to extend it on an ad hoc basis is not evidence of discrimination or the denial of a reasonable accommodation.

**3.**    Harmon also provides no evidence of retaliatory animus. In Defendants' opening brief, they argued that Harmon failed to produce any evidence that Reyes was aware of Harmon's 2017 complaint of discrimination regarding her shift change, so she could not possibly have retaliated against Harmon. Appellants' Br. 31. Harmon did not identify any such evidence in her response. Thus, Reyes, who initiated and carried out the separation, could not have been retaliating against Harmon for her 2017 complaint. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003).

Harmon's only other alleged protected activity was the submission of her doctor's note on May 31 indicating that she could return to work on June 4. ROA.3874. But Reyes told Harmon on May 30—*before* Harmon faxed in the doctor's note—that Harmon needed to return to work on May 31 or she would be separated. ROA.2565. Thus, the doctor's note, to the extent it is a protected activity, did not cause Harmon's separation.

The evidence shows that Harmon was separated because she exhausted her LWOP, not because individuals at TDCJ sought to discriminate or retaliate against her. The jury's verdict is not supported by sufficient evidence and should be reversed.

## II. The Failure to Rehire Harmon Was Not Discriminatory or Retaliatory.

Harmon's failure-to-rehire claims do not withstand scrutiny because, regardless of who the final decisionmaker was (John Werner or Billy Hirsch), there is insufficient evidence that he harbored a discriminatory or retaliatory motive.

**A.** If, as Defendants contend, the final decisionmaker was Billy Hirsch—the individual who checked the "Not Approved for Rehire" box on Harmon's application, ROA.3673—then Harmon must prove either (1) a discriminatory or retaliatory motive on his part, or (2) that he was influenced by someone who had such an improper motive. *E.g.*, *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653-54 (5th Cir. 2004). Harmon makes no effort to prove Hirsch's motivations, as there was no testimony about him.[2] She instead focuses her argument on Werner's alleged influence over Hirsch. Appellee's Br. 28-30. But not only is there no evidence of Werner's purported influence, there is no evidence that Werner possessed a discriminatory or retaliatory motive when he recommended not rehiring Harmon.

**B.** Harmon takes issue with Werner's testimony that he does not remember why he recommended against rehiring Harmon, arguing that Defendants had a burden to offer a legitimate non-discriminatory or non-retaliatory reason for the decision. Appellee's Br. 32-33. But "[b]ecause this case was 'fully tried on the merits,' the *McDonnell Douglas* burden-shifting framework 'drops from the case.'" *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713-14 (1983) (internal quotation marks and citations omitted)). Werner's inability to remember why he made

---

[2] Werner, testifying about the current process for rehire, mentioned that "Mr. Lumpkin" performs the final review. ROA.3029-30. But Werner also admitted that the process has changed a little since he (Werner) was the regional director. ROA.3029. As reflected in the evidence, Hirsch provided the final review here. ROA.3673.

this recommendation (when he handles between 10 and 50 such recommendations per day, ROA.3028) does not mean that Harmon has necessarily proven discrimination and retaliation.

But even if the burden-shifting process applies, Harmon has failed to initially establish a *prima facie* case of either disability discrimination or retaliation. A *prima facie* case of disability discrimination requires proof that Harmon, among other things, was not rehired "on account of" her disability. *Mueck v. La Grange Acquisitions, LP*, 75 F.4th 469, 483 (5th Cir. 2023). A *prima facie* case of retaliation similarly requires Harmon to show a "causal connection" between her protected activity and the hiring decision. *Lyons v. Katy ISD*, 964 F.3d 298, 304 (5th Cir. 2020). In other words, Harmon must still demonstrate that she was not rehired either because of her disability or her protected conduct. She has not done so.

The only interaction between Harmon and Werner prior to his recommendation not to rehire her was his conclusion that she should be placed back on the first shift after Siringi had moved her to second shift. ROA.3951. No discriminatory or retaliatory intent can be gleaned from those facts, and the gap in time between Harmon's September 2017 complaint and Werner's 2020 hiring recommendation is too large to permit an inference of retaliation. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001). While Harmon asserts that her 2018 EEOC charge of discrimination was pending at the time of Werner's hiring recommendation, her protected activity was filing the charge, 42 U.S.C. § 12203(a)—Harmon does not identify any way in which she "participated" in the process other than the initial filing. Nor does she identify evidence that Werner was even aware of her protected conduct in filing the charge.

**C.** Harmon also mischaracterizes Werner's testimony in an attempt to create animus that is not there. First, Harmon claims (at 30-31) that Werner admitted there were employee shortages in the Gist Unit—the Unit at which Harmon indicated she wanted to work, ROA.3683. But Werner's testimony was that, while there were shortages at TDCJ generally, he did not recall whether the Gist Unit had shortages specifically. ROA.3042-43. Harmon also asserts that Werner claimed that the 2017 EEO complaint was not referred to him, but then agreed that it was. Appellee's Br. 32. But considering Werner's testimony in context, he was discussing two different items: Harmon's grievance (which did not contain allegations of discrimination) and Harmon's complaint of discrimination. ROA.3022-26. The blurring of the two documents does not demonstrate discriminatory or retaliatory intent.

Harmon also suggests (at 31-32) that the notation on Harmon's application for rehire that she had left TDCJ's employment due to "LWOP-Medical" would have notified Werner that Harmon had a disability. ROA.3674. But LWOP can be used for medical issues that do not rise to the level of a disability. ROA.3612. Nor does mere awareness of a possible disability suffice as evidence of discriminatory intent. *See Mueck, LP*, 75 F.4th at 483 (describing prima facie case of disability discrimination). Harmon therefore has failed to identify sufficient evidence to support the jury's verdict on her failure-to-rehire claims.

## III. The Jury Made Irreconcilable Findings.

As demonstrated in Defendants' opening brief (at 35-38), the jury's findings that Harmon was terminated and not rehired *solely* because of her disability but *also*

because of her protected activity cannot be reconciled. Harmon's attempt to harmonize her two legal theories falls short.

Harmon begins by simply insisting that the findings can be reconciled. Appellee's Br. 34-35. But they can't. As the Third Circuit has explained, "[b]ecause the [Rehabilitation Act]'s causation requirement requires disability to be the sole cause of discrimination, an alternative cause is fatal to a[] [Rehabilitation Act] claim because disability would no longer be the sole cause." *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013). It makes no difference that all of Harmon's claims can be traced back to her disability. *See* Appellee's Br. 34-35. The key question in an employment dispute is *why* the employer took the adverse employment act. Here, the jury answered both (1) solely because of Harmon's disability, and (2) because of Harmon's protected activities. ROA.408-10. By assigning different sole and but-for causes to the same employment actions, the jury's answers do not represent "a logical and probable decision on the relevant issues as submitted." *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973).

Harmon suggests (at 35) that this result is somehow unfair and that a plaintiff should be able to recover for both disability discrimination and retaliation. But that is not how Congress wrote the law. Congress limited recovery under the Rehabilitation Act to discrimination caused "solely by reason of [the plaintiff's] disability," 29 U.S.C. § 794(a)—a causal requirement that eliminates any other but-for cause as a possible reason for the action. It is therefore not legally possible to recover for both a Rehabilitation Act claim of discrimination and a claim of retaliation for the same adverse employment action.

Relatedly, Defendants have not, as Harmon contends, treated the but-for-causation requirement as a sole-causation requirement. Appellee's Br. 36. Defendants do not deny that an action can have more than one but-for cause. But "a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020). Thus, under the jury's finding of retaliation, Harmon would not have been terminated (or would have been rehired) if retaliation were removed from the equation. ROA.409. But that cannot be squared with the jury's finding that discrimination was the sole cause of her termination and failure to be rehired. ROA.408.

Harmon's request (at 37) that the Court simply ignore the inconsistent answers is not supported by the precedent she cites. In those cases, the juries ignored instructions to skip other questions if they answered a certain way to an initial question—thus, the allegedly inconsistent answers were irrelevant. *Nat'l Hisp. Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551 (5th Cir. 2005); *White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir. 1987). That was not the case here, where the jury was instructed to answer all of the questions, and it was Harmon who presented inconsistent theories of recovery. Indeed, the jury could have consistently found discrimination but not retaliation or vice versa. But it did not, and a new trial is warranted.

## IV. The District Court's Damages Award Should Be Reversed.

Harmon asserts that, despite her salary of only $3880 per month, ROA.2593, the jury was allowed to award her $1 million for four years of backpay and that, despite affirmatively disclaiming any damages against Collier, ROA.274, the district court was allowed to enter a judgment of damages against him. Appellee's Br. 38-42.

Neither proposition can be sustained on this record. The district court's judgment of damages and attorneys' fees should be reversed.

## A. Harmon is not entitled to $1 million for four years of "wages and benefits."

The jury's decision to award Harmon $1 million in wages and benefits for the four years between her separation from TDCJ and trial is not supported by any evidence and should be reversed. Appellants' Br. 38-40. Harmon's arguments to the contrary do not establish otherwise.

*First*, Harmon quotes (at 38-39) only the first part of the question the jury was asked, referring to "damages." ROA.410. But the jury was further instructed to "Answer in dollars and cents for the following items and none other . . . Wages and benefits from May 31, 2018 to April 7, 2022." ROA.410; *see also* ROA.402 (instructing the jury that backpay includes "wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement"). And the jury answered $1 million. ROA.410. Thus, the only amount the jury could have been awarding in its answer is the wages and benefits Harmon would have earned in the four years between her separation from TDCJ and trial—that is, four years of backpay.

*Second*, Harmon does not deny that, according to her own testimony, her lost wages and benefits amounted to $227,000. ROA.2595. Her testimony confirms the damages calculation chart created by Defendants that shows approximately $192,000 in wages and benefits over 39 months. ROA.3963; *see also* Appellees' Br. 39 (relying on the "unfinished damages calculation chart"). Harmon's claim (at 40) that damages "need not be proven with mathematical precision" does not justify the

jury's award. As the precedent she cites establishes, "[a]ll that the law requires is that the best evidence of which a case is susceptible be produced, and if from such evidence the amount of damages caused by the defendant can be inferred or estimated by the jury with reasonable certainty, then the amount of such damages is for the jury." *United States ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 965 (5th Cir. 1998). Here, the best evidence was Harmon's own testimony of her monthly salary ($3880) and lost wages and benefits ($227,000). ROA.2593, 2595. It was not reasonable for the jury to quadruple that amount.

*Third*, Harmon attempts (at 39-40) to justify the jury's award by pointing to the full amount of retirement benefits she would have received had she retired in 2029, as reflected in a 2016 document from the Employees Retirement System of Texas (ERS). ROA.3565-68.[3] But future retirement benefits that Harmon would receive in 2029 are not "Wages and benefits from May 31, 2018 to April 7, 2022." ROA.410. While this Court has not created an inflexible rule that deems anything termed "pension benefits" as front pay, it has not permitted recovery for a lifetime's worth of future retirement benefits as backpay. *E.g.*, *Miller v. Raytheon Co.*, 716 F.3d 138, 146-47 (5th Cir. 2013) (denying enhanced pension benefits, due fifteen years in the future, as front pay); *Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374-75 (2d Cir. 2000) (agreeing that restoring service and salary credits during period of backpay was

_____

[3] Harmon's criticism (at 39) that *TDCJ* failed to create and produce an *ERS* statement for 2017 and 2018 makes no sense. ERS is an entirely different entity than TDCJ. *See* ROA.3563 (reflecting that Harmon subpoenaed the ERS document from ERS).

appropriate). If Harmon would not have received $861,000 in retirement benefits between May 31, 2018 to April 7, 2022—and the ERS document makes clear she would not have, ROA.3566—then that evidence cannot be used to support the jury's award. The damages must be reduced to, at most, $227,000.

**B.  Harmon cannot recover damages against Collier.**

1.    Harmon makes no argument that she is entitled to recover damages under the ADA from Collier, relying only on a claim that Collier waived the argument. Appellee's Br. 41. But Collier has objected to the claims against him at every stage of this suit. He filed a motion to dismiss based on sovereign immunity. ROA.211-15. He reiterated the argument when moving for a directed verdict after the close of Harmon's case. ROA.3154-55. At the close of all evidence, Defendants re-urged their motion for directed verdict, ROA.3392, and objected to the inclusion of any jury questions regarding Collier because Harmon, having testified she did not wish to be reinstated, could obtain no injunctive relief against him, ROA.3396-98. And then, after the district court entered a monetary judgment against Collier, ROA.785-86, Collier moved for a new trial or to alter or amend the judgment under Federal Rule of Civil Procedure 59, ROA.793-830, arguing that, because Harmon was not seeking any non-monetary injunctive relief against him, the ADA claims should have been dismissed, ROA.824-25. The motion further explained that Harmon was not seeking, and could not seek, any monetary damages against Collier because such damages were barred by sovereign immunity. ROA.824 (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365-74 (2001)).

If all of those objections were not sufficient to preserve the error, Collier may still raise the issue on appeal because it concerns sovereign immunity, a jurisdictional doctrine that may be raised at any time. *Tawakkol v. Vasquez*, 81 F.4th 397, 400 n.2 (5th Cir. 2023). And even beyond that, the plain-error doctrine permits reversal of the judgment against Collier because the district court's error (1) is plain, (2) affects substantial rights, and (3) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 675 (5th Cir. 2015). The district court awarded damages against Collier that were not sought but affirmatively disclaimed by Harmon, ROA.24-25, 274, and are unquestionably barred by immunity, *Garrett*, 531 U.S. at 360. Under any standard of review, the award cannot stand.

**2.** The reversal of the damages judgment against Collier also requires reversal of the attorneys' fee award against him because Harmon will not have prevailed against Collier. 42 U.S.C. § 2000e-5(k); *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). That Harmon believes she "clear[ed] her good name" (at 42) is not a judgment in her favor that alters the legal relationship between the parties, *Tex. State Tchrs. Ass'n v. Garland ISD*, 489 U.S. 782, 792-93 (1989), and does not make her a prevailing party as to Collier. If the monetary judgment against Collier is reversed, the attorneys' fees award must be reversed, too.

### C. Any monetary award should be reconsidered if the Court reverses any portion of the judgment.

Finally, for the reasons described in Defendants' opening brief (at 42-43), should Defendants prevail on any of their arguments, the Court should reduce or eliminate the award of backpay and attorneys' fees as appropriate.

## Conclusion

The Court should reverse the judgment of the district court and remand with instructions to enter judgment in favor of Defendants. Defendants request all other relief to which they are entitled.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Lanora C. Pettit
Principal Deputy Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Beth Klusmann
Beth Klusmann
Assistant Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Beth.Klusmann@oag.texas.gov

Counsel for Defendants-Appellants

## Certificate of Service

On November 20, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Beth Klusmann
BETH KLUSMANN

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,239 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Beth Klusmann
BETH KLUSMANN