

**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

Beth Klusmann  
Assistant Solicitor General

(512) 936-1914  
Beth.Klusmann@oag.texas.gov

September 10, 2024

**Via CM/ECF**

Mr. Lyle W. Cayce, Clerk
U.S. Court of Appeals for the Fifth Circuit

    **Re:** *Harmon v. Collier, et al.*, No. 23-40342

Dear Mr. Cayce:

Defendants-Appellants Bryan Collier and the Texas Department of Criminal Justice file this supplemental letter brief pursuant to the panel's August 28 order that asked the parties to "address[] the sufficiency of the evidence on the Rehabilitation Act claim and on any other issues that would arise were the court to conclude that sovereign immunity requires the dismissal of the Americans with Disability Act claim."

**I. With Two Relevant Exceptions, the Rehabilitation Act and ADA Use the Same Standards.**

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Although the Rehabilitation Act predates the ADA, Congress subsequently amended the Rehabilitation Act to incorporate the standards of the ADA:

Supplemental Letter Brief
Page 2

> The standards used to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d) (added by Rehabilitation Act Amendments of 1992, Pub. L. No. 102-569, § 506, 106 Stat. 4344 (1992)). Accordingly, and as this Court has recognized, the analysis of claims brought under the Rehabilitation Act and the ADA is often the same. *E.g.*, *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 399 (5th Cir. 2012) (per curiam); *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam).

Two significant exceptions to this overlap exist that are relevant to this case. *First*, sovereign immunity is not waived under the ADA, so only injunctive relief against Collier under an *Ex parte Young* theory is available for violations of that law. Appellants' Br. 40-41; *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001); *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 596 (5th Cir. 2021). Because Harmon did not seek or obtain such relief, any judgment against Collier must be reversed. Appellants' Br. 40-42. TDCJ may, however, be sued under the Rehabilitation Act because (unlike Collier) it is an entity that receives federal financial assistance. 29 U.S.C. § 794(a); ROA.361 n.4, 699. TDCJ does not interpret the Court's request for supplemental briefing to seek any additional argument on this point.

*Second*, and more relevant to the Court's request, the Rehabilitation Act and ADA require different levels of causation for proof of disability discrimination. The Rehabilitation Act imposes liability when the discrimination is "solely by reason of" the individual's disability, 29 U.S.C. § 794(a), while the ADA requires the discrimination to be "on the basis of" the individual's disability, 42 U.S.C. § 12112(a). Thus, under the ADA, "discrimination need not be the sole reason for the adverse employment decision," *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 835 (5th Cir. 2000); it need only be a but-for cause, *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1192 (11th Cir. 2024).

But the Rehabilitation Act requires more. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002). Liability cannot be imposed if Harmon's disability was only a "motivating factor" in TDCJ's decisions—her disability must have been the *sole* cause. *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 586 (5th Cir. 2021). As discussed below, Harmon failed to meet that standard.

## II. Harmon Does Not Have Sufficient Evidence That Her Separation and Failure To Be Rehired Were Caused Solely by Her Disability.

Considering Harmon's claims under the Rehabilitation Act's "exacting" sole-cause standard, *see Sloan v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, No. 4:15-CV-01682, 2017 WL 6884497, at *7 (S.D. Tex. Mar. 28, 2017), only makes her lack of sufficient evidence more obvious. Under a sole-cause standard, the presence of any other cause for TDCJ's decision (such as employee error) defeats liability for her disability-discrimination claims. *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d

Cir. 2013). Thus, if Harmon's evidence is insufficient under the ADA's but-for-cause standard, it is insufficient under the Rehabilitation Act's sole-cause standard. And, indeed, this Court has previously concluded that the failure to prove pretext under a less stringent causation standard means the same claim brought under the Rehabilitation Act would also fail. *Houston*, 17 F.4th at 585-86.

TDCJ has not found a significant number of cases considering the sufficiency of evidence under the Rehabilitation Act's sole-cause standard. At the summary-judgment stage, courts considering claims under the Rehabilitation Act use the *McDonnell Douglas* burden-shifting analysis—just as they would for any other discrimination statute—but they note that the discrimination must be solely because of the plaintiff's disability. *E.g.*, *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019); *Washburn v. Harvey*, 504 F.3d 505, 508-09 (5th Cir. 2007). While this case has proceeded to trial, some of this precedent is nevertheless helpful in determining how the sole-cause standard impacts Harmon's specific arguments.

In the briefing and at oral argument of this case, there was significant discussion of whether Marisol Reyes—the employee who calculated Harmon's LWOP and initiated Harmon's separation from TDCJ—made an error when counting Harmon's LWOP days. But the Rehabilitation Act "cannot protect an employee from erroneous or even arbitrary employment decisions, only those unlawfully motivated." *Moore v. Potter*, 716 F. Supp. 2d 524, 538 (S.D. Tex. 2008). Thus, although TDCJ contends no error was made, a decision based on an error would

amount to a reason for Harmon's separation from TDCJ other than her disability—defeating a sole-cause claim under the Rehabilitation Act.

Considering a Rehabilitation Act case in a summary-judgment posture, the Eastern District of Virginia found that a plaintiff who used all her leave and went on "AWOL status" for several months prior to her termination "failed to show that she was removed solely on the basis of her disability." *Vanyan v. Hagel*, 9 F. Supp. 3d 629, 639 (E.D. Va. 2014). Instead, the court pointed to the "multiple official communications indicating that she was removed for legitimate attendance-based reasons." *Id.* Similar records are available in this case, showing that Harmon was separated because she exhausted her LWOP days. ROA.2565-66 (phone calls regarding exhaustion of LWOP), 3959 (notice of expiration of LWOP), 3961-62 (separation paperwork discussing exhaustion of LWOP), 4214 (notice of limited LWOP remaining). And, indeed, Harmon herself testified that she believed she would still be employed by TDCJ if she had not exhausted her LWOP, ROA.2643, again defeating proof that her disability was the sole cause of her separation.

Harmon also argued that TDCJ had a "100% healed" policy that prevented her from returning to work with restrictions (although she fails to identify what restrictions would have enabled her to work). Appellee's Br. 18, 20-21. While TDCJ denies that it had such a rule, Appellants' Br. 25-27, the sole-cause standard would defeat liability under that theory. Because employees with and without disabilities may have work-related restrictions, a no-restrictions rule would, at most, disproportionately impact disabled employees. But the Sixth Circuit has held that

the sole-cause standard in the Rehabilitation Act prohibits disparate-impact claims, as such claims concern employment actions based on nondiscriminatory policies. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 241-42 (6th Cir. 2019). Thus, for example, a plaintiff who argued that more disabled employees were affected by a company-wide investigation into individuals who had taken FMLA leave failed to state a claim under the Rehabilitation Act because the investigation was nondiscriminatory. *Schobert v. CSX Transp. Inc.*, 504 F. Supp. 3d 753, 784 (S.D. Ohio 2020).

The same holds here for any purported 100% healed rule that would neutrally apply to employees (disabled or not) with job-related restrictions: such a claim sounds in disparate impact, not disparate treatment, and is therefore not cognizable under the Rehabilitation Act. And while TDCJ does not understand Harmon to argue that the 180-day LWOP limit is inherently discriminatory, the same reasoning would defeat any such claim. A neutral rule that employees cannot take more than 180-days of LWOP in a calendar year is a nondiscriminatory reason for Harmon's separation, eliminating any claim that her disability was the sole cause for her separation.

Finally, Harmon also has insufficient evidence that TDCJ failed to rehire her solely because of her disability. Appellants' Br. 33-35. First, considering the evidence in the light most favorable to Harmon, John Werner (who recommended that Harmon not be rehired, ROA.3673) was, at most, aware of her disability at some point. But mere awareness of a disability is not enough to demonstrate a *prima facie*

case of discrimination under the Rehabilitation Act. *Washburn*, 504 F.3d at 508-09 (listing *prima facie* elements). It cannot, therefore, be enough to prove sole causation. Second, the sole-cause standard undermines any attempt to attribute alleged animus from Werner to Billy Hirsch, who made the final decision not to hire Harmon. ROA.3673. Although this Court has permitted the use of the cat's paw theory to prove but-for causation, *Zamora v. City of Houston*, 798 F.3d 326, 331-33 (5th Cir. 2015), the Third Circuit has held that the sole-cause standard precludes use of the cat's paw theory in Rehabilitation Act claims, *Kowalski v. Postmaster Gen. of U.S.*, 811 F. App'x 733, 739 (3d Cir. 2020). This is yet another reason why Harmon failed to demonstrate her failure to be rehired was solely caused by her disability.

As described by the Sixth Circuit, sole causation is shown when "the employer has no reason left to rely on to justify its decision *other* than the employee's disability[.]" *Mitchell v. U.S. Postal Serv.*, 738 F. App'x 838, 848 (6th Cir. 2018). Harmon has not met that exacting standard. TDCJ reasonably (and likely correctly) believed that she exhausted 180 days of LWOP in a single year, and Harmon has insufficient evidence showing the failure to rehire her was caused by her disability. Thus, regardless of whether it is considered under the ADA's but-for standard or the Rehabilitation Act's sole-cause standard, the evidence is insufficient to support a conclusion that TDCJ engaged in disability discrimination.

### III. The Remainder of TDCJ's Arguments Are Unchanged.

Because the Rehabilitation Act otherwise borrows from the ADA's standards, 29 U.S.C. § 794(d), the remainder of TDCJ's arguments—whether sufficiency of the evidence or otherwise—remain unchanged.

**A.** TDCJ's argument that Harmon was not a "qualified individual with a disability" because she could not perform the essential functions of her job with or without a reasonable accommodation is the same under both the Rehabilitation Act and the ADA. Appellants' Br. 18-24; *see also* 29 U.S.C. § 705(20)(B) (expressly incorporating the ADA's definition of "individual with a disability"). And this Court has previously conducted a single analysis of whether a plaintiff was a qualified individual with a disability under both the Rehabilitation Act and the ADA. *Amsel*, 464 F. App'x at 400 (regarding employee who was unable to come to work).

Accordingly, the precedent cited in TDCJ's brief on this point is relevant regardless of whether it concerns the Rehabilitation Act or the ADA. Nevertheless, several of the cases cited do analyze Rehabilitation Act claims and whether extended time off is a reasonable accommodation that makes an individual qualified for the job in question. *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1161-62 (10th Cir. 2014); *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994); *see also Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 130-31 & n.13 (1st Cir. 2017) (applying *Hwang* in an ADA case and noting the standards are the same). Moreover, because Harmon's failure-to-accommodate claim is bound up in whether her requested accommodation was reasonable, TDCJ's argument on this point also remains the same. Appellants' Br.

24-25; *e.g.*, *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334 (11th Cir. 2022) (noting same standards when discussing alleged failure to accommodate under the Rehabilitation Act).

**B.** Next, TDCJ's arguments regarding Harmon's retaliation claims are unchanged regardless of the law used. The Rehabilitation Act does not contain an explicit retaliation provision. *See* 29 U.S.C. § 794. Instead, courts refer to section 794(d)'s incorporation of the ADA retaliation standards to define retaliation under the Rehabilitation Act. *Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 949 (E.D. Tex. 2017) (citing, *inter alia*, *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014) (per curiam); *Calderon v. Potter*, 113 F. App'x 586, 592 & n.1 (5th Cir. 2004) (per curiam); *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 n.6 (4th Cir. 2016)). Thus, for the reasons explained in TDCJ's briefing and at oral argument, Harmon lacks sufficient evidence that her separation and failure to be rehired were caused by retaliation for her allegedly protected acts regardless of the law considered.

**C.** The panel also requested briefing on "any other issues that would arise" if the Court dismissed the ADA claim because of sovereign immunity. TDCJ does not foresee any impacts beyond what it has already briefed as noted below.

**1.** If the district court had properly dismissed the ADA claim, the jury would not have been asked questions 1 through 4 regarding Collier's alleged violations of the ADA. ROA.410-12, 3396-97 (TDCJ's objections to including those questions). But the jury's answers to questions 1 through 5 regarding TDCJ's alleged violations

of the Rehabilitation Act, ROA.408-10, remain relevant and irreconcilable. TDCJ could not have taken adverse employment action against Harmon solely because of her disability but also because of her protected acts—claims that arise under the Rehabilitation Act. Appellants' Br. 35-38.

**2.** Harmon's damages, while excessive, are a result of alleged violations of the Rehabilitation Act, not the ADA. 42 U.S.C. § 2000d-7(a). Thus, elimination of the ADA claims will not alter TDCJ's arguments regarding damages. Appellants' Br. 39-40. But, as noted above, elimination of the ADA claims requires reversing the judgment against Collier and dismissing him from the lawsuit, as he is a defendant only under the ADA.

* * *

At the end of the day, Harmon's claims fail under either the Rehabilitation Act or the ADA. If anything, considering her claims under the Rehabilitation Act only makes her burden heavier, given the Rehabilitation Act's more stringent causation requirement. For the reasons already briefed and argued, as well as the reasons discussed herein, the Court should reverse the judgment of the district court and remand with instructions to enter judgment in favor of Defendants.

Respectfully submitted.

/s/ Beth Klusmann
BETH KLUSMANN
Assistant Solicitor General

cc: All counsel of record (via CM/ECF)