

Clayton D. Craighead
440 Louisiana, Suite 900
Houston, TX 77002
clayton.craighead@thetxlawfirm.com
Direct: (832) 798-1184
Fax: (832) 553-7261

September 10, 2024

**VIA CM/ECF**
Lyle W. Cayce
Clerk of the Court
United States Court of Appeals
for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

RE: *Harmon v. Collier*, No. 23-40342 (5th Cir.)

### LETTER BRIEF REGARDING THE REHABILITATION ACT AND SOVEREIGN IMMUNITY

Dear Mr. Cayce:

This letter responds to the Court's directive that the parties "file supplemental letter briefs addressing the sufficiency of the evidence on the Rehabilitation Act claim and on any other issues that would arise were the court to conclude that sovereign immunity requires the dismissal of the Americans with Disability Act claim."

**I.  Sovereign immunity does not bar Harmon's claims against Bryan Collier under the ADA.**

Harmon's claims are not impacted by sovereign immunity. Harmon brought claims against TDCJ and Bryan Collier. The claims against TDCJ were brought pursuant to the Rehabilitation Act ("RA") and were for monetary damages as reflected in the Jury Charge. (23-40342.404, Question No. 6 (asking the jury about damages)). The claims against Collier were brought pursuant to the American with Disabilities Act ("ADA") and Harmon did not request and was not awarded monetary damages for her claims against Collier. (23-40342.405-406.) Harmon brought claims against Collier for the purpose of later seeking injunctive relief against Collier but later voluntarily abandoned this relief.

Sovereign immunity can bar claims for monetary relief, but not prospective injunctive relief. *TDCJ v. Tex. Dep't of Crim. Just.-Corr. Insts. Div. Dir.*, No. 2:17-CV-0139-Z-BR, 2023 U.S. Dist. LEXIS 228439, at *2-3 (N.D. Tex. 2023) (recognizing that sovereign immunity bars monetary relief but does not bar prospective injunctive relief). Harmon has not sought monetary damages against Collier and instead only contemplated injunctive relief against Collier (which Harmon later abandoned) so none of the sought relief could be barred by sovereign immunity. *See id*.

## II. The elements of <u>discrimination</u> claims under the Rehabilitation Act and ADA are the same except for the causation standard.

Under section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, *solely* by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added).

Under Fifth Circuit precedent, the elements of an employment discrimination claim under the Rehabilitation Act are largely the same as those under the ADA, with the exception of the causation element. Whereas an individual's disability need only be a "motivating factor" under the ADA, the Rehabilitation Act prohibits discrimination only if it is "soley" because of the person's disability. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002); *Pinkerton v. Spellings,* 529 F.3d 513, 516 (5th Cir. 2008). However, the Second Circuit has recently held that the causation standards for employment discrimination claims under the Rehabilitation Act and the ADA are the same - "but for". *Natofsky v. City of New York,* 921 F.3d 337, 345 (2d Cir. 2019). Regardless, the evidence in this case meets the more stringent standard and therefore the jury verdict should be upheld.

## III. There is sufficient evidence to support liability for Harmon's claims under the Rehabilitation Act.

Appellants challenge the sufficiency of the evidence on two elements of Harmon's discrimination claim under the Rehabilitation Act: (1) whether Harmon was a qualified individual with a disability under the Rehabilitation Act, and (2) whether there is sufficient evidence to support the jury's verdict that Harmon's termination was soley because of her disability. (Appellants' Brief, p. 17.)

### a. Harmon was a "qualified individual with a disability."

Whether someone is a "qualified individual" under the Rehabilitation Act and the ADA is the same inquiry, because Section 504 of the Rehabilitation Act incorporates the definition of "qualified individual" from the ADA. 29 U.S.C. §§ 705(9)(B), 20(B), 794(a); *see also Valenzuela v. Univ. of Tex.*, No. 1:19-CV-1202-RP, 2022 U.S. Dist. LEXIS 57970, at *18 (W.D. Tex. 2022) ("Section 504 of the Rehab Act adopts the ADA's definition of individual with a disability."). A "qualified individual" "means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Appellants argue that Harmon was not qualified because she missed too many days of work. But the evidence shows that the reason Harmon was absent from work was because Appellants prohibited Harmon from returning to work unless she was fully released to work with no restrictions. For example, Reyes testified that Appellant's policies prohibit employees from returning to work with *any* restrictions. ROA.2709:4-9. Warden Siringi was also asked, "before somebody could return to work, they need to have a full 100 percent release from a doctor?" ROA.3241:17-20. Answer: "Yes. I'm aware of that." ROA.3241:17-20.

Consequently, Appellants misframe the argument as Harmon not being a qualified individual because she was absent from work. But Appellant is really arguing that Harmon was not a qualified individual because Appellant refused to let her return to work unless she had "no restrictions." These "no restriction" policies are unlawful under the ADA and therefore also under the Rehabilitation Act because they circumvent the protections of those Acts. *See, e.g.*, *Barton v. Checkers Drive-In Re Staurants, Inc.*, No. 11-186, 2011 U.S. Dist. LEXIS 32251, at *8 n.19 (E.D. La. 2011) ("'100% healed' policies are per se violations of the ADA because the '100% healed' or 'fully healed' policy discriminates against qualified individuals with disabilities and permits employers to substitute a determination of whether a qualified individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without accommodation. *See McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir.1999)") (citation supplied); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 475 (5th Cir. 2006) (finding employer's blanket policy against hiring anyone perceived as having uncontrolled diabetes as contradictory to "the TCHRA/ADA's emphasis on treating impaired job applicants as individuals"); *Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 1003 n.174 (W.D. Tex. 2011).

Because Appellant refused to permit Harmon to return to work with any restrictions, Appellant cannot now complain that Harmon was not a qualified individual because she missed work due to her disability because Appellants refused to let her return to work with restrictions in violation of the Rehabilitation Act.

Here, evidence was presented that Harmon could perform the essential functions of her position, but no evidence was presented that she could not except for Appellant's contention that Harmon was sometimes absent due to Appellants refusing to let her return to work with restrictions. Appellants' own witnesses said Harmon was qualified. Deputy Director Werner admitted that Harmon was qualified, and he had no questions about whether she could perform the job. ROA.3045:9-11; 2839:4-6. Likewise, Warden Siringi testified that Harmon could perform her job. ROA.3209:25-3210:2. Harmon testified that she could and did perform all the functions of her position when TDCJ allowed her to work. ROA.2874:22-23; 2873:5-10.

It was not unreasonable for the jury to find that Harmon was qualified for her job. There is no dispute that Harmon was able to perform the essential functions of her job. In a case similar to this one, this Court held that where the employer has an extremely lenient attendance policy and the employee stayed within that policy for years despite irregular attendance and despite their disability, the employee was qualified. *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 859–60 (5th Cir. 2010). Here, Harmon's disability did not make her unqualified for her job, even though it often caused her to miss work due to TDCJ's unlawful "100% Healed Policy." *Id*.

      b. <u>Harmon met the causation standard for her discrimination claim and her retaliation claim under the Rehabilitation Act.</u>

At the outset, it is important to note that the causation standard under the Rehabilitation Act is different for discrimination and retaliation claims. For discrimination claims, the Rehabilitation Act applies a sole causation standard as addressed above. For retaliation claims, the Rehabilitation Act applies the same standard as a retaliation claim under the ADA and that standard requires "a causal connection existed between the adverse employment action and the protected activity." *Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004).

Importantly, it is undisputed that Appellants refused to permit Harmon to return to work with any restrictions. Appellants maintained a "no restriction" or "100% healed" policy that precluded Harmon from returning to work and as discussed above, these policies are *per se* violations of the ADA and Rehabilitation Act. Appellant's "no restriction" policy resulted in Harmon missing work and Harmon being terminated for missing work. Based on this fact alone, Harmon meets the "solely" on the basis of disability standard for her discrimination claim and the looser "but-for" standard for her retaliation claim.

Appellants have not identified any reason for Harmon's termination other than her disability that required her to take intermittent time off. Deputy Director Werner clearly stated Harmon was not terminated for disciplinary or performance reasons.  ROA2762:10-14; 2838:25-2839:6.

TDCJ claims it never deviated from the 180-day LWOP policy. But Warden Siringi testified that he approved every "LWOP extension" ever requested and would later contradict himself and claim he never gave such an extension. Yet Warden Siringi also stated that employees only get 180 days of LWOP "unless it's approved to extend." ROA.3245:9-13.  Likewise, HR Director Shannon Wood said TDCJ could deviate from the 180 day LWOP Policy with the approval of Executive Director Bryan Collier. ROA.3316

Similarly, Appellants offered no explanation for why Harmon was not rehired when TDCJ was short thousands of correctional officers. Werner admitted he had no questions about whether she could perform the job. ROA2829:4-6.  He is the one that recommended she not be rehired but could not articulate a reason why he made such a recommendation.  ROA.2806:23-2807:1; 2809:12-16.  In fact, given the dire shortage of officers TDCJ was facing, Werner admitted he was surprised and could not explain why no one from TDCJ had reached out to Harmon about coming back to work. ROA.2840:5-15. Warden Siringi testified that someone called him when Harmon reapplied and he told them there was no reason not to rehire her, that she was a good employee.  ROA.3249:25-3250:9.

Appellants failed to offer any evidence that the decision to terminate and not rehire Harmon was based on anything other than her disability.  Consequently, the only evidence presented was that her disability was the sole reason for the adverse actions.

**IV.     The elements of <u>retaliation</u> claims under the Rehabilitation Act and ADA are the same.**

The Fifth Circuit has applied the same elements and causation standard for analyzing retaliation claims under the ADA and the Rehabilitation Act. *See Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004). "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). Thus, the analysis of Harmon's retaliation claim under the Rehabilitation Act is the same as the analysis of her retaliation claim under the ADA.

The Rehabilitation Act makes it unlawful for employers to retaliate against an individual because she has opposed an unlawful employment practice under the statute, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute. See 29 C.F.R. § 1614.101(b); see also *Shannon v. Henderson*, 2001 WL 1223633, at *3 n.4 (5th Cir. 2001) ("While the Rehabilitation Act contains no parallel language to the ADA provision prohibiting retaliatory discrimination, the Department of Labor has promulgated a regulation under the Rehabilitation Act barring retaliation.").

It is undisputed that Harmon engaged in protected activity. She filed a Charge of Discrimination with the EEOC in July 2018 alleging disability discrimination and retaliation. ROA.2588:4-9. While the EEOC was still investigating her charge, Harmon applied for rehire on November 6, 2019. ROA.2577:16-18. Werner's recommendation to not rehire Harmon was made on January 13, 2020. ROA.3673. Just days after deciding not to rehire Harmon despite her years of experience and qualifications, TDCJ submitted its second position statement to the EEOC on February 10, 2020. ROA.3846.

Again, there is no question that Harmon was qualified when she reapplied. In order to process her application, TDCJ required Harmon to provide a doctor's statement certifying that she could perform the essential functions of a corrections officer. ROA.3684, ROA.2579:8-18. Yet even after Harmon provided the doctor's statement, Werner, the regional Director that had investigated her EEO complaint, still recommended that she not be rehired. ROA.3674. On the stand, Werner could not articulate a non-discriminatory reason for why he recommended Harmon not be rehired. ROA.3012:24-3013:5.

Harmon had 19 years of experience and only two write-ups during those 19 years, both for being tardy in 2010. ROA.3041:7-16. Werner admitted that Harmon was qualified and he had no questions about whether she could perform the job.

ROA.3045:9-11. Werner ultimately had to concede that his reason for recommending she not be rehired could not have been based on lack of experience, disciplinary issues, or her ability to perform the job. ROA.3044:19-3045:14.

TDCJ has never been able to articulate a non-retaliatory or non-discriminatory reason for the decision not to rehire Harmon while her EEOC charge for disability discrimination was pending. Therefore, there is sufficient evidence to support the jury's finding that TDCJ failed to rehire her "but for" her protected activity.

### V. The Jury Charge properly reflected the causation difference for <u>discrimination</u> claims.

The Court charged the jury with the proper sole causation standard under the Rehabilitation Act.

> Defendant Texas Department of Criminal Justice terminated Plaintiff Kimberly Harmon "solely because" she had a record of diabetes, hypertension, and chronic lower back pain and/or was regarded as having diabetes, hypertension, and chronic lower back pain.

(23-40342.400.) Consistent with this instruction, the Jury was tasked with answering the following:

> **Question No. 1**
> Has Plaintiff Kimberly Harmon proved that Defendant Texas Department of Criminal Justice:
> a. Terminated Plaintiff Kimberly Harmon solely because of her disability?
>
>    Answer "Yes" or "No."
>    _____
>
> b. Failed to rehire Plaintiff Kimberly Harmon solely because of her disability?
>
>    Answer "Yes" or "No."
>    _____

(23-40342.403.)

### VI. The Jury Charge properly reflected the same elements for <u>retaliation</u> claims under the ADA and the Rehabilitation Act.

Consistent with the elements of <u>retaliation</u> claims being the same under the ADA and the Rehabilitation Act, the jury was tasked with answering the following:



(23-40342.404.)

## VII. All paths lead to liability.

Harmon brought claims for discrimination and retaliation based on her disability. Her claims encompassed separate occurrences: failure to accommodate, termination, and failure to rehire. Harmon's termination could have been discriminatory or retaliatory or based on a failure to accommodate or any combination of the three. The reason her termination could have been more than one is that her termination could have been solely on the basis of her disability while also meeting the lower but-for standard for retaliation because the events leading to the retaliation shared a nexus with the reason for termination: Harmon's disability. *Trentham v. Hidden Mt. Resorts, Inc.*, No. 3:08-CV-23, 2010 U.S. Dist. LEXIS 69813, at *38-39 (E.D. Tenn. 2010) ("Accordingly, the Court has found no indication that *Gross* so changed the landscape that a finding of discrimination that would not have occurred 'but for' the plaintiff's age, and a finding that a plaintiff was discharged 'solely' because of a disability, are inherently inconsistent.").

Harmon is protected against discrimination based solely on her disability and she is also protected from retaliation for complaining about issues related to her disability. Appellants could have terminated her solely on the basis of her disability and retaliated against her for her complaints related to her disability. This is so because "but for" causation is a lesser standard and does not preclude other events based "solely" on disability. *See Alaniz v. Zamora-Quezada*, 591 F.3d 761, 777 n.50 (5th Cir. 2009) ("new trial not warranted where the jury answered "yes" to both: Did Plaintiff ... suffer an adverse employment action as a result of engaging in protected activity under Title VII? (retaliation) and Did Defendant

terminate Plaintiff ... because she rejected sexual advances, requests, or demands by Dr. Zamora? (quid pro quo)) *quoting Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984) ("Whether or not there were other reasons for the employer's action, the employee will prevail only by proving that 'but for' the protected activity she would not have been subjected to the action of which she claims.").

Similarly, Appellants could have terminated Harmon "solely" based on her disability and also failed to accommodate her. Appellants could have retaliated against Harmon and also failed to accommodate her. Appellants could have terminated her solely because of her disability, terminated her in retaliation for complaining about how she was treated, and failed to accommodate her.

Here, Appellants discriminated against Harmon "solely" based on her disability. Alternatively, Appellants retaliated against Harmon "but for" her complaints of discrimination. Alternatively, Appellants failed to accommodate her, which lead to her termination. Alternatively, Appellants discriminated against Harmon "solely" based on her disability and retaliated against her "but for" her complaints of discrimination because the discrimination and retaliation share a nexus: her disability, and the retaliation would not have occurred but for Harmon having a disability to complain about and failed to accommodate her. This is so because each cause of action shares a factual nexus: they are all based on her disability.

But even if the answers were inconsistent, it would not matter. Under Fifth Circuit precedent, if the jury's answer to a question should have pretermitted further inquiry is clear and disposes of the legal issues, court's "must ignore the jury's conflicting answers to any other questions, as they are irrelevant." *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551 (5th Cir. 2005). As discussed in *White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir.1987)

> To effectuate best the intent of the jury, we hold that if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions. The subsequent questions are by definition irrelevant in these circumstances, and cannot be used to impeach the jury's clear verdict.

Here, if the answers are inconsistent they are individually dispositive and must be reconciled per Fifth Circuit precedent. For example, the Jury could have simply answered Question No. 1 that asked whether she was terminated and/or not rehired "solely because of her disability" (23-40342.403) and moved onto damages. Alternatively, the Jury could have answered "No" to Question No. 1, but answered "Yes" to Question No. 2, and the result would have been the same. (23-40342.403.) Similarly, the Jury could have answered Question Nos. 1 and 2 "No", but answered "Yes" to Question No. 3, and the result would have been the same. (23-40342.403.) Or, as happened, the Jury could have answered "Yes" to every question on liability and the result would have been the same.

On every theory of liability, the Jury unanimously found liability. Thus, the jury could have stopped deliberating after answering the first question and completing the damages interrogatories. Consequently, because the first question (and other questions) could have disposed of all legal issues except for damages, the jury verdict is reconcilable. *See id*.

## VIII. Conclusion

Harmon requests that the Court affirm the jury's verdict in all respects.

Thank you,

_____
Clayton D. Craighead
and
Sara Richey

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of September 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notice to counsel of record for Defendants—Appellants Bryan Collier, Executive Director of Texas Department of Criminal Justice and Texas Department of Criminal Justice.

*/s/ Clayton D. Craighead*
Clayton D. Craighead